UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DUROCHER individually and on behalf of all others similarly situated, DARIN HARRIS individually and on behalf of all others similarly situated, ANTHONY MIRANDO, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION Transferred per the conditional transfer order (Docket #54) to the Northern District of Illinois, RIDDELL, INC., ALL AMERICAN SPORTS CORPORATION doing business as RIDDELL/ALL AMERICAN, RIDDELL SPORTS GROUP, INC., EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORPORATION, RBG HOLDINGS CORPORATION, )<br><br>Defendants. ) | 1:13-cv-01570-SEB-DML |

**ORDER GRANTING DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS [DKT. NO. 78]**

This matter comes before us on Defendants' Motion to Strike Class Allegations.

[Dkt. No. 78.] The motion is fully briefed, including supplemental briefing filed by both

parties. [*See* Dkt. Nos. 79, 84, 91, 100, 101, 102.] For the following reasons, we GRANT

Defendants' Motion. Plaintiffs are allowed to recast their proposed class consistent with

the discussion and findings below as well as the Court's Order on Defendants' Motion to Dismiss within the next twenty (20) days.

## Background and Procedural History

Defendants include a thorough recitation of the facts in their opening brief. [Dkt. No. 79 at 3-14.] Plaintiffs do not dispute any of these facts or set forth any additional facts in support of their position. [Dkt. No. 84 at 1-2.] Many of the facts are set forth in our Order on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, entered contemporaneously herewith. Thus, we outline only the class-action-specific allegations below.

As a preliminary matter, Defendants invoke matters outside the pleadings on their motion to strike, both in their opening brief and their subsequent briefs. "Generally, material outside of the pleadings is not considered on a motion to strike" because "the Court must treat all well pleaded facts as admitted." *Perez v. PBI Bank, Inc.*, No. 1:14-cv-01429-SEB-MJD, 2015 WL 500874, at *10 (S.D. Ind. Feb., 4, 2015) (citing *Sun–Flex Co. Inc. v. Softview Computer Prods. Corp.*, 750 F. Supp. 962, 964 (N.D.Ill. 1990); *U.S. Oil Co. v. Koch Ref. Co.*, 518 F. Supp. 957, 959 (E.D. Wis. 1981)). Even on a motion to strike class allegations, it is not appropriate for the Court to consider matters outside the pleadings. *Guzman v. Bridgepoint Educ., Inc.*, No. 11cv69 WQH (WVG), 2013 WL 593431, at *7 (S.D. Cal. Feb. 13, 2013) (citation omitted). In *Blihovde v. St. Croix County, Wis.*, the court noted that a "motion to strike" class allegations was mislabeled because generally in a "motion to strike under Fed. R. Civ. P. 12(f), a party argues that portions of the pleadings are facially improper." 219 F.R.D. 607, 612 (W.D. Wis. 2003). However,

in *Blihovde*, "both parties [] cited a number of materials outside the pleadings to support their positions" and as a result, the court construed the motion as one for denial of class certification under Rule 23(c)(1). *Id.* Here, Defendants have cited matters outside the pleadings and Plaintiffs responded only by offering more complete portions of the evidence Defendants cited (i.e., the *Arlington v. NCAA* docket at No. 101-1). Consequently, we will not consider materials cited by Defendants that are outside the pleadings in ruling on Defendants' Motion to Strike. [*See, e.g.,* Dkt. No. 100.]

## A. Proposed Class.

Plaintiffs' Second Amended Complaint (SAC) filed on March 14, 2014 [Dkt. No. 71] includes class action allegations. Specifically, Plaintiffs seek to certify a class defined as follows:

> All present or former members of a college football team in the United States, who, while wearing a helmet manufactured by Defendants, participated in a college football game or practice from November 15, 2000 through the present and, while playing in such a game or practice, experienced a head impact.

> **Riddell Subclass A:**

> All present or former members of a college football team at a school in Arizona, California, Colorado, District of Columbia, Florida, Guam, Illinois, Indiana, Maryland, Massachusetts, Missouri, Montana, Ohio, Oregon, Pennsylvania, Utah, Washington or West Virginia, who, while wearing a helmet manufactured by Defendants, participated in a college football game or practice from November 15, 2000 through the present and, while playing in such a game or practice, suffered a head impact.

> **Riddell Subclass B:**

> All present or former members of a college football team at a school in Alabama, Alaska, Arkansas Connecticut, Delaware, 44 Georgia, Hawaii, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico,

New York, North Carolina, North Dakota, Northern Mariana Islands, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virgin Islands, Virginia, Washington, Wisconsin, or Wyoming, who, while wearing a helmet manufactured by Defendants, participated in a college football game or practice from November 15, 2000 through the present and, while playing in such a game or practice, suffered a head impact and subsequently suffered a concussion or one or more concussion-like symptoms, defined as: amnesia; confusion; headache; loss of consciousness; balance problems or dizziness; double or fuzzy vision; sensitivity to light or noise; nausea; feeling sluggish, foggy or groggy; feeling unusually irritable; concentration or memory problems; and slowed reaction time.

[Dkt. No. 71 at ¶ 154.] The proposed class (including subclasses) expressly excludes "Defendants and their subsidiaries and affiliates; all former college football players who played professional football in the National Football League; all persons who make a timely election to be excluded from the Class and subclasses; governmental entities; and any judicial officers or staff to whom this case is referred, and their immediate family members." [*Id.*] Defendants direct our attention to the fact that Subclasses A and B overlap by including present and former members of college football teams in Oregon and Washington. Plaintiffs also allege that the proposed class would "include hundreds if not thousands of persons who have developed or will develop mental or physical problems as a result of sustaining traumatic brain injuries, concussions or concussion-like symptoms while playing in a college football game or practice, and that the locations of such persons is geographically dispersed throughout the country." [SAC ¶ 156.]

**B.      Individual Experiences of Plaintiffs.[1]**

Plaintiffs each had unique college experiences.  Mr. DuRocher played football at the University of Oregon in 2003 before he transferred to the University of Washington, where he finished his playing career in 2006.  [SAC ¶ 13.]  Mr. Harris, on the other hand, began his college football career in 2004, playing for the University of Washington until 2008.  [*Id.* ¶ 15.]  Mr. DuRocher played quarterback, while Mr. Harris played strong safety and was on the special teams unit.  [*Id.* ¶¶ 13, 15.]  Defendants conclude, therefore, that Plaintiffs would have been exposed to different coaches, team physicians, managers, and trainers and would have participated under different health and fitness policies.  [*Id.*]  Additionally, each Plaintiff has his own pre- and post-college backgrounds and personal health histories.  [*Id.*]

Mr. DuRocher was hit during a 2006 game, leaving him lightheaded and dizzy, for which the coaching staff, team physician, or trainer removed him from the game. [SAC

---

[1] In addition to the facts set forth below, Defendants explain that Plaintiffs fail to identify the style of Riddle helmet that they wore (or those worn by the putative class) or the warnings that they or the putative plaintiffs received.  [Dkt. No. 79 at 9-10 (describing the differences and advancements in helmet technology as well as the 2002 warning and pre-2002 warning accompanying Riddle helmets).]  We do not believe these facts create an impediment to class allegations such that a motion to strike is warranted.  Similar to our ruling in the Order related to Defendants' Motion to Dismiss, identification of the helmets at issue may be resolved through discovery and subclasses could be delineated therefrom.

The same is true for the array of injuries potentially suffered by the putative class members.  Defendants criticize Plaintiffs for not defining "head impact" in the proposed class definition.  [Dkt. No. 79 at 13-14.]  This certainly is an issue that can been addressed through the class certification process and is not a sufficient basis for striking the class allegations.

¶ 13.] He was later diagnosed with a concussion. [*Id.*] Mr. DuRocher also claims to have experienced "other similar head impacts" but cannot recall them specifically. [SAC ¶ 13.]

Mr. Harris recounts a hit he sustained during a 2007 game in which he was blindsided that caused him to experience lightheadedness. [*Id.* ¶ 16.] Mr. Harris was not removed from the game, but instead returned to play the next time the defense took the field. [*Id.*] Mr. Harris recalls experiencing another hit during the following season in 2008, after which he was removed from the game. [*Id.* ¶ 16.]

Messrs. DuRocher's and Harris's alleged injuries differ. Mr. Harris claims he has experienced headaches, memory loss, an inability to concentrate or focus, anxiety, and depression after graduating from college. [*Id.* ¶ 16.] Except for headaches, DuRocher claims to have experienced none of the same alleged symptoms as Harris.

## C.    **Available Concussion-related Information.**

Plaintiffs' SAC contains an extensive recitation of the available information relating to the effect of concussions over time. [SAC ¶¶ 56-77.] For example, in addition to the information they recite as being publicly available in the 1990s (*id.* ¶¶ 61-64) – when the putative class members who played college football in the early 2000s would have been in high school – Messrs. DuRocher and Harris also describe various publicly available reports and studies by college-football-playing universities and other institutions and organizations about concussions and head injuries at different times throughout the class period, including publications issued in 2000, 2001, 2002, 2003, 2005, 2006, 2007, 2008 and 2010 (*id.* ¶¶ 65–77).

Plaintiffs also refer to specialized and unique programs focused on athletes and sports injuries at certain football-playing universities, such as the University of North Carolina-Chapel Hill's Center for the Study of Retired Athletes. [SAC ¶¶ 68–69, 73.] Plaintiffs also refer to the NCAA which issues concussion awareness posters and materials (*e.g.*, SAC ¶ 32), and its efforts from 2004-2009 to document concussions in football through its "injury surveillance system" (*id.* ¶¶ 71–72). The earlier iterations of Plaintiffs' complaint cited the NCAA's Concussion Management Plan established in August 2010. [First Am. Class Action Compl. (ECF No. 9) at ¶ 91.] According to DuRocher and Harris, the NCAA's Concussion Management Plan also affected the level of awareness concerning concussion risks.

In light of the Court's Order on Defendants' Motion to Dismiss, the remaining claims for which we must decide whether a class action might be appropriate are strict liability for design defect and manufacturing defect. [*See* Order on Dkt. No. 76, entered concurrently with this Order.] Plaintiffs' medical monitoring and negligence claims have been dismissed.

## Analysis

### A.    Class Certification and Motions to Strike/Prematurity Standards

Two competing principles drive the parties' opposing arguments. First, motions to strike class allegations are generally regarded as premature because the shape and form of

the class is to be given time to evolve through discovery.[2]  On the other hand, personal injury claims are generally not appropriate for class treatment due to both the individualized nature of personal injuries as well as variations among applicable state

[2] Plaintiffs cite to several cases in the Seventh Circuit and nationwide holding that motions to strike class allegations are premature.  Dkt. No. 84 at 2-3 (citing *Miller v. Janssen Pharmaceutical Prods., L.P.*, No. 05-CV-4076-DRH, 2006 WL 488636, at *1–2 (S.D. Ill. Feb. 28, 2006*); *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, a decision denying class status by striking class allegations at the pleading stage is inappropriate."); *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) ("While there may indeed be issues with the proposed class, the Court believes it is premature to engage in this analysis at the motion to dismiss stage. Rather, these issues are better raised after the parties have had an opportunity to conduct class discovery and fully brief the motion for class certification."); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893 (N.D. Ill. 2012); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class."); *see also Chenensky v. N.Y. Life. Ins. Co.*, No. 07 Civ. 11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) ("Motions to strike are generally looked upon with disfavor [and] a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation . . . before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."); *Ehrhart v. Synthes (USA)*, No. 07-01237, 2007 WL 4591276, at *5 (D.N.J. Dec. 28, 2007) ("Decisions from our sister courts (and courts in a number of other jurisdictions) have made clear that dismissal of class allegations at [the motion to dismiss] stage should be done rarely and that the better course is to deny such a motion because the 'shape and form of a class action evolves only through the process of discovery.'") (citing cases); *Smith v. Wash. Post. Co.*, 962 F. Supp. 2d 79, 89-90 (D.D.C. 2013) ("[A] motion to strike is a disfavored, drastic remedy[.]  Courts rarely grant motions to dismiss or strike class allegations before there is a chance for discovery."); *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) ("Motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle"); *Iniguez v. The CBE Group*, 969 F. Supp. 2d 1241, 1248 (N.D. Cal. 2013) ("Dismissing class allegations at the pleading stage . . . is rare because the parties have not yet engaged in discovery and the shape of a class action is often driven by the facts of a particular case.")).

laws.[3]  Both principles present valid and legitimate arguments informing our determination

of the proper path of this litigation.

Often the procedural order for a proposed class action is that the complaint is filed,

discovery is conducted, and plaintiffs file a motion to certify the proposed class by

---

[3] Defendant provide an appendix collecting decisions in which federal courts have rejected nationwide or multi-state class actions for personal injury/product liability claims. Dkt. No. 79-1 at 2 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) (affirming circuit court's rejection of a nationwide class of personal injury, product liability asbestos exposure claims alleging injuries from exposure to asbestos produced by 20 asbestos manufacturers); *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (reversing district court's certification of a 17-state medical monitoring class of prosthetic heart-valve recipients, in part because each plaintiff's need or lack of need for monitoring was highly individualized and "[d]ifferences in state laws on medical monitoring further compound[ed] these disparities"); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) (affirming denial of class certification of products liability, medical monitoring, and negligence claims by recipients of the defendant's pacemakers, in part because of individual issues of causation and damages, as well as variations in the laws of the 48 states implicated by the class claims), *opinion partially amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 n.15 (5th Cir. 1996) (decertifying national products liability class because district court failed to consider how variations in state law would affect predominance and superiority and noting that differences in class members' nicotine exposure, product(s) used, knowledge about the effects of smoking, and reasons for smoking "impact[] the application of legal rules such as causation, reliance, comparative fault, and other affirmative defenses"); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 618, 627 (3d Cir. 1996) (reversing district court's order certifying a nationwide personal injury, product liability class, in part because factual "[d]ifferences in amount of exposure and nexus between exposure and injury lead to disparate applications of legal rules, including matters of causation, comparative fault, and the types of damages available to each plaintiff" and because legal and factual differences "when exponentially magnified by choice of law considerations, eclipse any common issues"), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (directing district court to decertify nationwide class of persons claiming injury from allegedly defective penile implants, in part because the district court failed to consider how law applicable to proposed class members' claims differs from jurisdiction to jurisdiction and because "the products are different, each plaintiff ha[d] a unique complaint, and each receive[d] different information and assurances from his treating physician"); *see also id.* at 1089 & n.4 (noting a "national trend to deny class certification in drug or medical product liability/personal injury cases" and citing 18 cases dating from 1978 to 1995 for that proposition); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) (ordering district court to decertify nationwide class of hemophiliacs allegedly infected by defendants' HIV-tainted blood products, in part because of state-law differences with respect to negligence), *cert. denied*, 516 U.S. 867 (1995)); *see also id.* at 3-8 (collecting district court decisions).

demonstrating that the class and its representative(s) meet the requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Rule 23(b). Those familiar requirements provide as follows:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>> **(1)** the class is so numerous that joinder of all members is impracticable;
>>
>> **(2)** there are questions of law or fact common to the class;
>>
>> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>>
>> **(4)** the representative parties will fairly and adequately protect the interests of the class.
>
> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
>> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>>
>>> **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>>
>>> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>>
>> **(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>>
>> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23. The Rule 23(a) requirements have been succinctly summarized as: numerosity, commonality, typicality, and adequacy. *See Wal-Mart Stores v. Dukes*, – U.S. – 131 S.Ct. 2541, 180 L.Ed. 2d 374 (2001).

As we have noted and as is evidenced by Plaintiffs' citations, several courts have held that, "[b]ecause a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, a decision denying class status by striking class allegations at the pleading stage is inappropriate." *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). These courts hold that class certification "issues are better raised after the parties have had an opportunity to conduct class discovery and fully brief the motion for class certification." *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013). Indeed, in the Fifth Circuit it may be an abuse of discretion for the district court to strike class action allegations based solely on the initial pleadings. *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) ("The court too bears a great responsibility to insure the just resolution of the claims presented; it should be loathe to deny the justiciability of

class actions without the benefit of the fullest possible factual background."). Numerous

other courts have similarly held. *See* n.2, *supra*. Indeed, the Supreme Court has advised:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S., at 160, 102 S.Ct. 2364, and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.*, at 161, 102 S.Ct. 2364; *see id.*, at 160, 102 S.Ct. 2364 ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . . indispensable"). Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. "'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Falcon, supra*, at 160, 102 S.Ct. 2364 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); some internal quotation marks omitted). Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676–677 (C.A.7 2001) (Easterbrook, J.).

*Dukes*, 131 S.Ct. at 2551-52.

The procedure of delaying a ruling on class certification until some amount of

discovery is completed, however, is not ironclad or without exception. Both the Third and

the Sixth Circuits along with a myriad of district courts have granted motions to strike

when the court was unable to "see how discovery or for that matter more time would have

helped" the plaintiffs strengthen the class allegations. *Pilgrim v. Universal Health Card,*

*LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *see also Landsman & Funk PC v. Skinder-Strauss*

*Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) (holding that the case before it was not among

the rare "cases where the complaint itself demonstrates that the requirements for

maintaining a class action cannot be met.") (citing *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)); *see, e.g., Bd. of Educ. of Tp. High School v. Climatemp, Inc.*, No. 79 C 3144, 1981 WL 2033, at *2 (N.D. Ill. Feb. 20, 1981) ("Although the Attorney General claims that such a motion is improper technically and procedurally, motions to strike are a reflection of the court's inherent power to prune pleadings in order to expedite the administration of justice and to prevent abuse of its process. This procedure is useful in bringing into focus issues the resolution of which governs the broader question of whether a class action is maintainable, and a number of courts in this circuit have employed it.") (citing 2A Moore's Federal Practice, § 12.21 at p. 2419; *Thill Sec. Corp. v. New York Stock Exch. [1972 TRADE CASES P 74,239]*, 469 F. 2d 14 (7th Cir. 1972) (denial of motion to strike class action is not appealable under 28 U. S. C. § 1291); *United States Dental Inst. v. Am. Assoc. of Orthodontist*s, 1977-2 TRADE CASES, P 61,557, No. 74 C 2924, 1977 WL 1442 (N. D. Ill. July 21, 1977) (motion to strike class action allegations granted); *Miller v. Motorola*, 76 F. R. D. 516 (N. D. Ill. 1977) (motion

to strike class action allegations granted)).[4]  In the exceptional case, circumstances may

warrant a motion to strike class allegations to conserve court and party resources and where

---

[4] Defendants provide a robust compilation of cases within the Seventh Circuit and elsewhere that have granted or affirmed motions to strike class allegations over the course of the past last five years.  *See* Dkt. No. 91 at 5, n.1 (citing *Pilgrim v. Universal Health Card LLC*, 660 F.3d 943 (6th Cir. 2011); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014); *Alqaq v. CitiMortgage, Inc.*, No. 13 C 5130, 2014 WL 1689685 (N.D. Ill. Apr. 29, 2014); *Trunzo v. Citi Mortg.*, No. 2:11-CV-01124, 2014 WL 1317577 (W.D. Pa. Mar. 31, 2014); *Wolfkiel v. Intersections Ins. Servs. Inc.*, No. 13 C 7133, 2014 WL 866979 (N.D. Ill. Mar. 5, 2014); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817 (N.D. Ill. 2013); *Loreto v. Procter & Gamble Co.*, No. 1:09-CV-815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013); *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013); *Bohn v. Boiron, Inc.*, No. 11 C 08704, 2013 WL 3975126 (N.D. Ill. Aug. 1, 2013); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. MDL 2385, 2013 WL 3791509 (S.D. Ill. July 18, 2013); *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263 (W.D. Wis. 2013); *Zulewski v. Hershey Co.*, No. CV 11-05117-KAW, 2013 WL 1748054 (N.D. Cal. Apr. 23, 2013); *Semenko v. Wendy's Int'l, Inc.*, No. 2:12-CV-0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013); *Cowit v. CitiMortgage, Inc.*, No. 1:12-CV-869, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW JEMX, 2013 WL 658251 (C.D. Cal. Feb. 21, 2013); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221 CEJ, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013); *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689 (M.D. Ga. 2012); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757 (D. Md. 2012); *Baker v. Microsoft Corp.*, 851 F. Supp. 2d 1274 (W.D. Wash. 2012); *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219 (D. Colo. Sept. 25, 2012); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, No. 8:12-CV-897-T-30TBM, 2012 WL 3156596 (M.D. Fla. Aug. 3, 2012); *Arango v. Work & Well, Inc.*, No. 11 C 1525, 2012 WL 3023338 (N.D. Ill. July 24, 2012); *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2012 WL 2061883 (E.D. La. June 6, 2012); *Rikos v. Procter & Gamble Co.*, No. 1:11-CV-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012); *Scott v. Family Dollar Stores, Inc.*, No. 3:08CV540, 2012 WL 113657 (W.D.N.C. Jan. 13, 2012) *aff'd in part, rev'd in part on other grounds*, 733 F.3d 105 (4th Cir. 2013); *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270 (S.D. Ill. 2011); *Bevrotte ex rel. Bevrotte v. Caesars Entm't Corp.*, No. CIV.A. 11-543, 2011 WL 4634174 (E.D. La. Oct. 4, 2011); *Bauer v. Dean Morris, L.L.P.*, No. CIV.A. 08-5013, 2011 WL 3924963 (E.D. La. Sept. 7, 2011); *Schilling v. Kenton Cnty., Ky.*, No. CIV.A. 10-143-DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128 (N.D. Cal. 2010); *Hall v. Equity Nat'l Life Ins. Co.*, 730 F. Supp. 2d 936 (E.D. Ark. 2010); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010); *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010); *Cornette v. Jenny Garton Ins. Agency, Inc.*, No. 2:10-CV-60, 2010 WL 2196533 (N.D. W.Va. May 27, 2010); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010); *In re St. Jude Med. Inc. Silzone Heart Valves Prods. Liab. Litig.*, No. MDL. 01-1396JRTFLN, 2009 WL 1789376 (D. Minn. June 23, 2009); *In re Katrina Canal Breaches Consol. Litig.*, No. CIV.A. 05- 4182, 2009 WL 1707923 (E.D. La. June 16, 2009)).

the "pleadings make clear that the suit cannot satisfy Rule 23." *Hioll v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 830 (N.D. Ill. 2013). "Even when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action." *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010).

Defendants argue that this is such an exceptional and rare case that warrants striking Plaintiffs' class allegations prior to discovery and prior to a motion for certification. Defendants seek to strike Plaintiffs' class action allegations for two overarching reasons. First, Defendants argue that personal injury product liability claims are inherently individual and state-law specific. As a result, common issues suitable for nationwide class treatment under Fed. R. Civ. P. 23 do not exist. Second, Defendants argue that Plaintiffs have not defined a proper class because membership in the class can only be ascertained through individual inquiry based on subjective criteria. Defendants argue that the class definition alleged in the SAC can never be certified and, as a result, we should strike the class allegations in their entirety.

Plaintiffs place all of their proverbial eggs in one basket.[5]  Their entire retort to Defendants' Motion to Strike is an argument based on timing – that Plaintiffs should be given time to conduct discovery before being forced into what is essentially a certification dispute.[6]  Plaintiffs do not dispute Defendants' factual statement.  In fact, Plaintiffs do not respond to Defendants' arguments at all, relying on an unconvincing sidestep that they can always amend their class definition at a later date.  Not true.  A determination of whether Defendants' motion is premature necessarily depends on the viability of Plaintiffs' class action allegations, which issue, unfortunately, Plaintiffs did not defend.

Mindful of the narrow road we must traverse here, we are persuaded that Defendants' Motion to Strike is not entirely premature.  The parties and Court can enjoy significant time and resource savings by striking allegations of the SAC that it is clear even

---

[5] Plaintiffs make a half-hearted attempt to have the Court stay Defendants' Motion; however, the request is unsupported, fails to comply with Local Rules, and belies their response to the motion.  *See* S.D. Ind. L.R. 7-1(a) ("Motions must be filed separately, . . . .  A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court.").  Instead of responding in full to Defendants' Motion, Plaintiffs seek a stay if we reject their prematurity argument.  This we will not do.  Plaintiffs are reminded that they must respond in full to motions or risk waiving a substantive response.  Should Plaintiffs seek alternative treatment of a motion (such as staying the briefing of a motion), they should file a separate motion compliant with S.D. Ind. L.R. 7-1(a).

[6] Defendants criticize two cases cited by Plaintiffs in which the court denied motions to strike in products liability/personal injury cases – *Ehrhart v. Synthes (USA)*, No. 07-01237 (SDW), 2007 WL 4591276 (D.N.J. Dec. 22, 2007) and *Miller v. Janssen Pharmaceutica Products, L.P.*, No. 05- CV-4076-DRH, 2006 WL 488636 (S.D. Ill. Feb. 28, 2006).  [Dkt. No. 91 at 7-9 (citing Dkt. No. 84 at 3).]  Those cases contain no *Twomblyl/Iqbal* discussion and more recent decisions in the same court have stricken class allegations when the inappropriateness was evident from the face of the complaint.  In *Miller*, the court deferred a certification determination where the parties had already agreed to a certification briefing schedule, but then the court denied certification after a year of discovery and briefing.  2006 WL 488636 at *1, 6-7.  Here, the parties have not agreed to a certification briefing schedule and the Defendants contend that the reasons to deny certification are already obvious from the class allegations in the SAC.

now will never come to fruition. Although Plaintiffs press their claim that discovery may shape the class definition and that they may narrow or change the class definition as is their prerogative, Plaintiffs have not explained *how* discovery might enlighten the pursuit of class treatment or *what* discovery they would seek. In short, "[P]laintiffs do not explain how discovery could make a difference to the issue of certification." *See Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 273 (W.D. Wis. 2013). Plaintiffs do not refute that "when the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained." *Wright*, 2010 WL 4962838, at *1. It is Plaintiffs who are "oblig[ed] in [their] complaint to allege facts bringing the action within the appropriate requirements of the rule [23]." *Cook County Teachers Union, Local 1600, Am. Fed. of Teachers, AFL-CIO v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972). Plaintiffs cannot promise to, at some undisclosed time in the future, revise their proposed class definition to satisfy Rule 23's requirements. Plaintiffs may be "permitted to seek certification of a more narrowly defined class than that currently defined, which may consist of fewer states and/or claims, should it become necessary to do so at the class certification" [Dkt. No. 101 at 3], but Defendants are entitled to know the class definition being alleged against them and their motion to strike the class certification claim requires us to rule now, for the reasons previously cited.

**B.   Rule 23 Requirements.**

**1.   Individual Factual Inquiries.**

Defendants argue that the overwhelming precedent denying the certification of personal injury class actions warrants an early inquiry into the sustainability of Plaintiffs'

class action claim.[7]  Defendants contend that personal injury products liability class actions struggle to satisfy the commonality requirement of Rule 23(a).  "Commonality" pursuant to Rule 23 requires:

> that the issues raised by the complaint be "common to the class as a whole" and that they "turn on questions of law applicable in the same manner to each member of the class."  The Supreme Court has recently injected more rigor into the commonality inquiry, clarifying that it does not suffice for a plaintiff merely to raise common "questions," since "any competently crafted class complaint" will do so.  "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 297 (S.D. Ind. 2013) (internal citations omitted)

(citing *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (citing *Califano v.*

---

[7] Defendants filed a Supplemental Brief in Support of Defendants' Motions to Strike Class Allegations and to Dismiss Plaintiffs' Second Amended Complaint [Dkt. No. 100] to which Plaintiffs responded [Dkt. No. 101].  Defendants argue that in a hearing in the NCAA MDL Plaintiffs' counsel admitted that "[w]e think case law is quite clear, you cannot certify personal injury claims." [Dkt. No. 100 at 1.]  Defendants cite to many troublesome statements by Plaintiffs in that case (which include Messrs. DuRocher and Harris) admitting that "it is essentially unquestionable that personal injury claims can no longer be certified as litigation classes," and that "in any of these concussion cases, you've got to examine on an individual basis the sequence of events for each kid," among others.  [*Id.* at 8-12.]  Plaintiffs respond that these opinions are not shared by everyone, including the MDL court, and that this statement was made in the context of appointing class counsel and in consideration of the class settlement in terms of the rights that the class would be giving up in favor of the settlement.  [Dkt. No. 101 at 3, 8-11.]  Plaintiffs also point out the qualifiers in various statements that class treatment is "generally" or "essentially" or "virtually" not appropriate, but dispute that they have admitted that their proposed class here would not be certifiable.  [Dkt. No. 101 at 9.]  Materials outside the pleadings are not to be considered on a motion to strike, *see Perez*, 2015 WL 500874, at *10; however, we are deeply concerned that counsel for Messrs. DuRocher and Harris and the Plaintiffs themselves would disavow the availability of a personal injury class action in the NCAA MDL and then pursue a products liability/personal injury class action against Defendants here.  These statements will certainly be considered on a motion to certify should Plaintiffs choose to replead their class allegations, and Plaintiffs will need to do more than point to qualifying adjectives to avoid a denial of certification in such similar circumstances.

*Yamasaki*, 442 U.S. 682, 700–701 (1979)); *Dukes*, 131 S.Ct. at 2551 (quoting Richard Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L.Rev. 97, 132 (2009)).

The SAC alleges that the following common questions of law and fact are shared by the putative class members:

> because the Class Members all played under the same rules and practices; all played with the same equipment; and they all suffered or were exposed to an increased risk of traumatic brain injuries, concussions or concussion-like symptoms while playing football and wearing helmets manufactured by Defendants. Such common questions include:
>
> (a) whether Defendants voluntarily undertook and/or otherwise had a duty to provide warnings to players about the injuries associated with repeated brain trauma, concussions and concussion-like symptoms;
>
> (b) whether Defendants failed to appropriately warn or otherwise inform players about their risks of concussions even while wearing Defendants' helmets;
>
> (c) whether Defendants had a duty to use liner materials with newer energy-absorbing capabilities within subject helmets to effectively reduce acceleration of the head on impact by compressing to absorb force during the collision; and
>
> (d) whether Defendants willfully and wantonly concealed evidence related to the injuries associated with repeated brain trauma, concussions and concussion like symptoms.

[SAC ¶ 157.]

Defendants complain that the common questions alleged by Plaintiff of "whether Defendants failed to appropriately warn or otherwise inform players about their risks of concussions even while wearing Defendants' helmets" (SAC ¶ 157(b)):

> splinters into a host of individual legal and factual inquiries – e.g., what time period is being evaluated; what Riddell warnings the player received; whether Riddell had a duty to warn about risks it did not create; whether

19

> Riddell satisfied its duty to warn by providing warnings to colleges purchasing helmets; what information the player already had from public knowledge, from his prior playing experience, from his university or his team, from his team physicians and trainers, and from his treating physicians – to name just a few.

[Dkt. No. 79 at 16, 20.] Often, failure-to-warn cases are inherently case- and fact-specific. *See Block v. Abbott Labs.*, No. 99C 7457, 2002 WL 485364, at *4 (N.D. Ill. Mar. 29, 2002) ("[W]e are very troubled by the prospect of having to resolve the highly individualized issue of proximate cause with respect to the failure-to-warn claim.").

Defendants contend that player-specific inquiries are pervasive in Plaintiffs' design and manufacturing defect claims as well. For example, Defendants maintain that the Court will be required to consider individualized inquiries such as the condition, care, misuse, and alteration of each player's helmet and proximate cause related to each individual's concussion or head inquiry, which requires consideration of the specifics of the impact – magnitude, direction, duration, circumstances, etc. [Dkt. No. 79 at 20.] Defendants also argue in their Reply that a statute-of-limitations defense is individualized for each class member based on Indiana's discovery rule. [Dkt. No. 91 at 12 (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998)).]

Though Plaintiffs make no response to Defendants' arguments, it is not impossible to imagine how these questions *could possibly* have common answers. For example, if the insufficient warranty spanned the entire class period and we assume that the class members had the most complete publicly-available information, the class would share common questions that could have common answers. Indeed, Defendants' example of the question "whether Riddell had a duty to warn about risks it did not create" is the quintessential

common question that would inform the class's failure to warn claim and would be shared among all class members. Similarly, like in *A.K.W. v. Easton-Bell Sports, Inc.*, 454 Fed. Appx. 244 (5th Cir. 2011), where the actual helmet at issue was lost, an expert could assume that helmets were in perfect condition and proffer opinions about the least drastic concussions in the best possible scenarios to arrive at a conclusion of the manufacturing and design defects of Defendants' helmets.

We say again that Defendants' required showing on a motion to strike class allegations is a steep one – we cannot say that the "pleadings make clear that the suit cannot satisfy Rule 23" with respect to the alleged facts and commonality. *Hioll*, 946 F. Supp. 2d at 830. It is also conceivable that a class definition could be crafted narrowly enough to eliminate a statute of limitations concern, such that we cannot say it would be impossible to do so. Common questions of fact that could be shared among the putative class members weighs in favor of denying Defendants' motion to strike.

Defendants also contend that the medical causation necessary to prove the putative plaintiffs' claims requires individual, not class, treatment. [Dkt. No. 79 at 20-21.] For example, family and medical history, age, diet, and lifestyle may affect each putative plaintiff's response to head-related injuries. [*Id.* (citing *In re PPA Prods. Liab. Litig.*, 208 F.R.D. 625, 631–32 (W.D. Wash. 2002) (cataloguing individual medical issues relevant to causation); *In re Rezulin Prods. Liab. Litig.*, 21 210 F.R.D. 61, 66–67 (S.D.N.Y. 2002) (same)).] Defendants criticize Plaintiffs' class definition because it does "not limit class members' claims to objectively diagnosable diseases but instead include[s] largely subjective and commonly experienced symptoms such as loss of memory, sleeplessness,

and mood swings." [*Id.* at 21 (citing SAC ¶ 144).] Although not part of the SAC, Defendants point to Mr. DuRocher's pre-existing congenital brain tumor and brain surgery as one example of the individualized nature of a class plaintiff's medical history that could have a significant impact on medical causation that would negative class treatment. [*Id.*]

Medical causation and personal injury allegations raise a significant hurdle that makes class treatment questionable. As Defendants note, "no federal appellate court has approved a nationwide personal injury, product liability or medical monitoring class." [*Id.*] The individualized inquiries related to medical causation described by Defendants weigh heavily in favor of striking Plaintiffs' class action allegations and foreshadow a tremendous uphill battle for Plaintiffs to certify a class action based on personal injuries of individual class members.

## 2. Differing Laws.

Defendants also contend that because the litigants are not governed by the same legal rules, a class action is not proper. "No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), (b)(3)." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Defendants argue that 55 different jurisdictions' laws would be at issue under the current proposed class definition and therefore a class action is not proper. [Dkt. No. 79 at 17 (citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1015).] Because Indiana follows the rule of *lex loci delicti*, the court will apply the substantive law of the place of the harm – or where the last event necessary to make

defendant potentially liable took place. [Dkt. No. 77 at 9-11; *Klein v. DePuy, Inc.*, 506 F.3d 553, 555 (7th Cir. 2007)].[8]

Defendants also note that products liability law differs among the jurisdictions at issue. Indeed, Defendants' Second Appendix compares many jurisdictions' products liability law and contrasts the differences that may impede the common treatment of claims across the class, even after considering the segregation of states into two proposed subclasses. [*See* Dkt. No. 79-2.] At a minimum, Defendants have established that the laws at issue in the proposed class are varied, inconsistent, and conflicting. [*Id.*; *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001) ("[T]he laws of negligence, product[s] liability, and medical monitoring all differ in some respects from state to state.") (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 n.15 (5th Cir. 1996)). The inconsistent laws applicable to the putative members' claims weighs heavily in favor of striking Plaintiffs' current class definition.

### 3.    Subclasses.

Pursuant to Fed. R. Civ. P. 23(c)(4) and (5), certification of particular issues for class treatment is authorized as well as the dividing of a class "into subclasses that are each treated as a class under this rule." Plaintiffs suggest dividing their putative class into two subclasses based on the location of the college football team for which they played. [*See*

---

[8] Neither Defendants nor Plaintiffs had the benefit of our Order on Defendants' Motion to Dismiss prior to Defendants' Motion to Strike and subsequent briefing. By Order issued concurrently with this Order, Plaintiffs' medical monitoring and negligence claims have been dismissed. A great deal of Defendants' arguments relate to those two common law claims, which are now inapplicable. [*See, e.g.,* Dkt. No. 79 at 23-24, 25-26.]

SAC ¶ 154.]  Defendants argue that these subclasses do not eliminate the obstacles to class treatment.

First, Plaintiffs do not explain the purpose of the subclasses or the commonality among the locations contained in each subgroup or why Washington and Oregon are both included in each subgroup.  [*See* Dkt. No. 79 at 24.]  These gaps may ultimately be filled by discovery, if we denied the motion to strike.

However, Defendants argue that the subclasses do not – indeed, cannot – remedy the concerns presented by the major or nuanced differences among the jurisdictions contained in each subclass.  For example, as Defendants note, "[w]ithin subclass A, the jurisdictions take differing approaches to strict products liability, whether by adopting statutory versus common-law systems (*see, e.g.*, App. 2 at 9 ns. 23-27), or with differing elements to the claims (*see, e.g.*, *id.* at 10-11), or different recognized defenses (s*ee, e.g.*, *id.* at 17-18.)[.]  Subclass B sees similar variations, including that some jurisdictions, such as Virginia, do not even recognize strict liability. (*Id.* at 9 n.26.)"  [Dkt. No. 79 at 26.]  According to Defendants' analysis (to which Plaintiffs do not respond or object), "[d]igging down further into the 'subordinate concepts' of product liability law across all 55 jurisdictions only further reveals that no matter how the classes were subdivided, all of the putative class members would not be 'governed by the same legal rules,' as the law

requires." [*Id.* at 26-27 (citing *Bridgestone-Firestone*, 288 F.3d at 1015; *Yaz & Yasmin*, 275 F.R.D. at 275).][9]

As discussed above, the differences (both major and nuanced) between the potentially 55 different jurisdictions pose a major impediment to class treatment. Plaintiffs have not suggested how their proposed class treatment would address this potential roadblock to class certification. Based on the plain language of the proposed subclasses coupled with the differing treatment of products liability law among the jurisdictions at issue, serious questions exist signaling that the putative class members' claims are unable to be adjudicated in either a class setting or via the use of subclasses.

### 4.    Class Member Identification.

Classes must be defined in such a way that membership in the class can be readily determined based on objective criteria. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Said another way, if determining the membership of the class turns on subjective criteria requiring plaintiff-by-plaintiff inquiry, the class is not ascertainable. *Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980) (class not ascertainable where members highly diverse and difficult to identify); *Gomez v. Ill. State Bd. of Educ.*, 117

---

[9] Although Plaintiffs have not suggested that they might propose individual state subclasses, Defendants argue that such subclasses would not eliminate the barriers to class treatment because individual issues of fact would still remain. [Dkt. No. 79 at 27 (citing *In re Yaz & Yasmin*, 275 F.R.D. at 277).] Defendants argue that the case-management obstacles to 55 subclasses would be insurmountable. [*Id.*] Because Plaintiffs have not suggested 55 subclasses and our review at this stage is limited to the allegations of the SAC, we will not consider the viability of a proposed class with 55 state-specific subclasses. The same is true of Defendants' argument that issue-specific subclasses would not resolve the impediment to the necessity of individualized inquiries. [*See id.*] Because Plaintiffs have not made this proposal, any analysis of this scenario remains purely hypothetical.

F.R.D. 394, 397 (N.D. Ill. 1987) (membership must be capable of determination by reference to objective criteria).  When a class is not ascertainable (i.e., the membership is not objectively determinable), a court is within in its authority to strike the class allegations. *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2012 WL 2061883, at *3 (E.D. La. June 6, 2012) (striking class allegations because "ascertaining the class cannot be done by any objective method" and would instead involve "examin[ing] the specific circumstances" of each purported class member).

Defendants argue that the class proposed here by Plaintiffs is not ascertainable for several reasons.  First, they maintain that the term "head impact" (which a putative member must have experienced while playing college football) is subjective and undefined.  [Dkt. No. 79 at 30.]  This term, they stress, is overly broad because it would include those who experienced "only *de minimis* risk or harm" and, as drafted, would include those who experienced "head impact" and then later suffered a single headache.  [*Id.*]  Although we find Defendants concerns respecting the term "head impact" to be valid, this alone would not warrant striking the class allegations.  Defining the term "head impact" is not impossible, despite its being a subject of debate in a class certification motion.

Although Defendants attack the proposed class definition with respect to whether a putative class member wore a Riddell helmet when the head impact occurred [Dkt. No. 79 at 31], we have already found this issue does not impede the claim.  [*See* Order on Motion to Dismiss issued concurrently herewith.]  It is conceivable that discovery will enlighten the facts pertaining to the sale and distribution of Riddell helmets to college football teams. Whether the putative class members wore a Riddell helmet is akin to most product liability-

based class actions where the class definition includes members who used the challenged product. We do not find this issue to justify striking Plaintiffs' class action allegations.

Defendants also assert that the concussion and concussion-like symptoms described in Subclass B require class member-specific factually inquiries. [Dkt. No. 79 at 31.] In support, Defendants point to *In re Rezulin*, where the court found that "whether an individual is asymptomatic or has manifested physical injury can be determined only by a physician." 210 F.R.D. at 74. Based on the plain language of the proposed Subclass B, we are not convinced that treating healthcare professionals will be required to identify the members of the class. Subclass B's language includes players who:

> suffered a head impact and subsequently suffered a concussion or one or more concussion-like symptoms, defined as: amnesia; confusion; headache; loss of consciousness; balance problems or dizziness; double or fuzzy vision; sensitivity to light or noise; nausea; feeling sluggish, foggy or groggy; feeling unusually irritable; concentration or memory problems; and slowed reaction time.

[SAC ¶ 154.] In our view, it would not be *impossible* for a putative plaintiff to show membership in the class absent the testimony of a healthcare professional. At least some of the symptoms described in the definition such as headache, dizziness, double or fuzzy vision, sensitivity to light or noise, nausea, etc., do not require verification by a healthcare professional; rather, they are symptoms easily recognized as such by an individual class member. Clearly, such symptoms can impact the issue of whether claims are individually based or common to the class, but we are not persuaded that it turns on whether a healthcare professional would be required to make that determination. At this point, we do not find

that identifying the putative class members is impossible based on the proposed class definition.

## Conclusion.

Defendants set forth a persuasive argument supported by the facts of the SAC and controlling legal precedent that Plaintiffs' current class definition should not be certified and that granting a motion to strike is the appropriate means by which class action allegations that cannot be certified are disposed of. However, Defendants have "not definitively establish[ed] that a class action cannot be maintained in *any* form." [*See* Dkt. No. 84 at 7.] Plaintiffs are entitled to an opportunity to narrow and more specifically define their proposed class in light of and consistent with the law and facts discussed herein.

Therefore, we GRANT Defendants' Motion to Strike Class Allegations. Plaintiffs' class allegations contained in paragraphs 154-63 of the SAC are accordingly stricken. Plaintiffs are allowed an opportunity to recast their proposed class by filing an amended complaint within twenty (20) days from the date of this Order.

Date: 3/31/2015

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Don Barrett
BARRETT LAW OFFICE PA
dbarrett@barrettlawgroup.com

Paul Cereghini
BOWMAN & BROKE LLP
paul.cereghini@bowmanandbrooke.com

Cary A. Slobin
BOWMAN & BROOKE, LLP
cary.slobin@bowmanandbrooke.com

Robert Latane Wise
BOWMAN AND BROOKE LLP
rob.wise@bowmanandbrooke.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Lynn A. Toops
COHEN & MALAD LLP
ltoops@cohenandmalad.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Scott D. Gilchrist
COHEN & MALAD LLP
sgilchrist@cohenandmalad.com

Vess Allen Miller
COHEN & MALAD LLP
vmiller@cohenandmalad.com

Randall R. Riggs
FROST BROWN TODD LLC
rriggs@fbtlaw.com

Mark S. Mester
LATHAM & WATKINS LLP
mark.mester@lw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN
ecabraser@lchb.com

Wendy Ruth Fleishman
LIEFF CABRASHER HEIMANN &
BERNSTEIN LLP
wfleishman@lchb.com

Daniel J. Kain
LITTLETON JOYCE UGHETTA PARK
& KELLY LLP
daniel.kain@littletonjoyce.com

Scott Toomey
Littleton Joyce Ughetta Park & Kelly,
LLP
scott.toomey@littletonjoyce.com

David B. Franco
THE DUGAN LAW FIRM, APLC
dfranco@dugan-lawfirm.com

James Dugan
THE DUGAN LAW FIRM, APLC
jdugan@dugan-lawfirm.com